IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION
No. 7:07-CR-10-D
No. 4:15-CR-70-D
No. 4:20-CV-3-D

| | | |
|---|---|---|
| LARONE FREDERICK ELIJAH, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

On October 25, 2019, in case number 7:07-CR-10, Larone Frederick Elijah ("Elijah") moved pro se for a sentence reduction under the First Step Act ("First Step Act"), Pub. L. No. 115-391, § 404, 132 Stat. 5194, 5222 [D.E. 102].[1] On January 6, 2020, in case number 4:15-CR-70, Elijah moved pro se under 28 U.S.C. § 2255 to vacate, set aside, or correct his 108-month sentence [D.E. 132]. On March 25, 2020, Elijah moved for an extension of time to file a memorandum in support [D.E. 135]. On April 14, 2020, Elijah moved for an extension of time to file his section 2255 motion [D.E. 137]. On April 22, 2020, Elijah filed a memorandum of law [D.E. 138]. On April 27, 2020, Elijah moved to preserve the right to file supplements and additional claims to his section 2255 motion [D.E. 139]. On April 28, 2020, Elijah moved for discovery [D.E. 141]. On April 30, 2020, Elijah moved for compassionate release under the First Step Act [D.E. 115].

---

[1] For clarity, the court underlines docket entry numbers associated with case number 7:07-CR-10.

On May 11, 2020, the government moved to dismiss Elijah's motions [D.E. 145] and filed a memorandum in support [D.E. 146]. On May 29, 2020, Elijah moved to seal docket entry numbers 102 and 103 [D.E. 129]. On June 4, 2020, Elijah moved for summary judgment on his section 2255 motion [D.E. 150]. On June 24, 2020, the government responded in opposition [D.E. 151]. On July 6, 2020, Elijah replied [D.E. 152].

On July 8, 2020, Elijah moved for compassionate release and attached additional medical records [D.E. 153]. On July 8, 2020, Elijah again moved for compassionate release [D.E. 132]. As explained below, the court grants the government's motion to dismiss, dismisses Elijah's section 2255 motions, grants Elijah's motion to seal docket entry number 129 in case number 7:07-CR-10-D, and denies Elijah's other motions.

I.

On August 17, 2016, without a plea agreement, Elijah pleaded guilty in case number 4:15-CR-70-D to possession with intent to distribute a quantity of cocaine, a quantity of heroin, and a quantity of 3, 4 methylenediocy-N-ethylcathinone. See Rule 11 Tr. [D.E. 123] 3–23. In doing so, Elijah knew that he was waiving the opportunity to challenge this court's denial of his motion to suppress. See id. at 17; United States v. Elijah, 723 F. App'x 191, 192–93 (4th Cir. 2018) (per curiam) (unpublished), cert. denied, 139 S. Ct. 785 (2019).

On March 7, 2017, the court granted Elijah's motion to represent himself. The court appointed Elijah's former counsel as standby counsel. See Sentencing Tr. [D.E. 124] 2–8. On that same date, the court held Elijah's sentencing hearing and calculated Elijah's advisory guideline range to be 151 to 188 months. See id. at 8–37; [D.E. 117]. After considering all relevant factors under section 3553(a), the court sentenced Elijah to 108 months' imprisonment. See Sent. Tr. at 30–37. Elijah appealed [D.E. 121]. On February 28, 2018, the United States Court of Appeals for the Fourth

2

Circuit affirmed this court's judgment. See Elijah, 723 F. App'x at 192–93.

A.

In Elijah's section 2255 motion, he argues: (1) his trial counsel provided ineffective assistance of counsel; (2) his appellate counsel provided ineffective assistance of counsel ; (3) United States v. Haymond, 139 S. Ct. 2369 (2019), applies to his supervised release revocation sentence of August 17, 2015;[2] and (4) prosecutorial misconduct. See [D.E. 132] 4–9. In his memorandum of law, Elijah expounds and contends: (1) his trial counsel was ineffective in failing to seek to suppress certain evidence and in failing to seek certain discovery; (2) his trial counsel was ineffective by failing to let Elijah hear certain radio transmissions; (3) his trial counsel was ineffective by failing to develop a winning legal strategy; (4) his trial counsel was ineffective while cross examining the officers at the suppression hearing and in failing to argue prosecutorial misconduct; (5) his trial counsel was ineffective by failing to seek to dismiss the indictment; (6) his trial counsel was ineffective by allowing Elijah to testify at the suppression hearing; (7) his trial counsel was ineffective by failing to seek GPS data before the suppression hearing; (8) his trial counsel was ineffective by failing to file a motion for appropriate relief in state court concerning Elijah's state-court convictions; (9) his trial counsel was ineffective by failing to object to using the 2016 Guidelines book at sentencing; (10) his trial counsel was ineffective by failing to object at the Rule 11 hearing to the court's statement that a straight guilty plea by Elijah would bar appellate review of the court's denial of his motion to suppress; (11) trial counsel was ineffective by failing to move

_____

[2] On August 17, 2015, the court revoked Elijah's federal supervised release in case number 7:07-CR-10-D and sentenced him to 36 months' imprisonment. See [D.E. 81, 82]. On March 3, 2016, the Fourth Circuit dismissed Elijah's appeal as untimely. See [D.E. 91]. Elijah has finished serving his revocation sentence in case number 7:07-CR-10-D. He remains incarcerated in case number 4:15-CR-70-D

3

to dismiss the indictment for selective prosecution; (12) actual innocence; (13) actual innocence of career offender; (14) violation of due process and Federal Rule of Criminal Procedure 32 when Elijah represented himself at sentencing; (15) failure to follow the First Step Act; (16) his trial counsel was ineffective by failing to argue that Elijah was seized in violation of the Fourth Amendment during the traffic stop; and (17) appellate counsel was ineffective by failing to raise winning issues. See [D.E. 138] 1–35.

A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure for "failure to state a claim upon which relief can be granted" tests a complaint's legal and factual sufficiency. See Ashcroft v. Iqbal, 556 U.S. 662, 677–78 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555–63, 570 (2007); Coleman v. Md. Court of Appeals, 626 F.3d 187, 190 (4th Cir. 2010), aff'd, 566 U.S. 30 (2012); Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008); accord Erickson v. Pardus, 551 U.S. 89, 93–94 (2007) (per curiam). In considering a motion to dismiss, a court need not accept a complaint's legal conclusions. See, e.g., Iqbal, 556 U.S. at 678. Similarly, a court "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." Giarratano, 521 F.3d at 302 (quotation omitted); see Iqbal, 556 U.S. at 677–79. Moreover, a court may take judicial notice of public records without converting a motion to dismiss into a motion for summary judgment. See, e.g., Fed. R. Evid. 201(d); Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007); Philips v. Pitt Cty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009). In reviewing a section 2255 motion, the court is not limited to the motion itself. The court may consider "the files and records of the case." 28 U.S.C. § 2255(b); see United States v. McGill, 11 F.3d 223, 225 (1st Cir. 1993). Likewise, a court may rely on its own familiarity with the case. See, e.g., Blackledge v. Allison, 431 U.S. 63, 74 n.4 (1977); United States v. Dyess, 730 F.3d 354, 359–60 (4th Cir. 2013).

Elijah procedurally defaulted his claims concerning Haymond, prosecutorial misconduct, actual innocence, violation of due process and Rule 32 at the sentencing hearing, and failure to follow the First Step Act by failing to raise them on direct appeal. Thus, the general rule of procedural default bars Elijah from presenting these claims under section 2255. See, e.g., Massaro v. United States, 538 U.S. 500, 504 (2003); Bousley v. United States, 523 U.S. 614, 621 (1998); United States v. Fugit, 703 F.3d 248, 253 (4th Cir. 2012); United States v. Sanders, 247 F.3d 139, 144 (4th Cir. 2001). Furthermore, Elijah has not plausibly alleged "actual innocence" or "cause and prejudice" resulting from the alleged errors about which he now complains. See Bousley, 523 U.S. at 622–24; Coleman v. Thompson, 501 U.S. 722, 753 (1991); United States v. Frady, 456 U.S. 152, 170 (1982); United States v. Pettiford, 612 F.3d 270, 280–85 (4th Cir. 2010); Sanders, 247 F.3d at 144; United States v. Mikalajunas, 186 F.3d 490, 492–95 (1999). Accordingly, the claims fail.

As for the claims Elijah presented to the Fourth Circuit on direct appeal, Elijah cannot use section 2255 to recharacterize and relitigate claims he lost on direct appeal. See Bousley, 523 U.S. at 622–23; Frady, 456 U.S. at 164–65; Dyess, 730 F.3d at 360; United States v. Roane, 378 F.3d 382, 396 n.7 (4th Cir. 2004); Boeckenhaupt v. United States, 537 F.2d 1182, 1183(4th Cir. 1976) (per curiam). Thus, the court dismisses Elijah's claims concerning his guilty plea, the motion to suppress, and his career-offender designation. See Elijah, 723 F. App'x at 191–92.

As for Elijah's ineffective assistance of counsel claims, the "Sixth Amendment entitles criminal defendants to the effective assistance of counsel—that is, representation that does not fall below an objective standard of reasonableness in light of prevailing professional norms." Bobby v. Van Hook, 558 U.S. 4, 7 (2009) (per curiam) (quotations omitted). The Sixth Amendment right to counsel extends to all critical stages of a criminal proceeding, including plea negotiations, trial, sentencing, and appeal. See, e.g., Lafler v. Cooper, 566 U.S. 156, 164–65 (2012); Missouri v. Frye,

5

566 U.S. 134, 140 (2012); Glover v. United States, 531 U.S. 198, 203–04 (2001). "[S]entencing is a critical stage of trial at which a defendant is entitled to effective assistance of counsel, and a sentence imposed without effective assistance must be vacated and reimposed to permit facts in mitigation of punishment to be fully and freely developed." United States v. Breckenridge, 93 F.3d 132, 135 (4th Cir. 1996); see Glover, 531 U.S. at 203–04. To state a claim of ineffective assistance of counsel in violation of the Sixth Amendment, Elijah must show that his attorney's performance fell below an objective standard of reasonableness and that he suffered prejudice as a result. See Strickland v. Washington, 466 U.S. 668, 687–91 (1984).

When determining whether counsel's representation was objectively unreasonable, a court must be "highly deferential" to counsel's performance and must attempt to "eliminate the distorting effects of hindsight." Id. at 689. Therefore, the "court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. A party also must show that counsel's deficient performance prejudiced the party. See id. at 691–96. A party does so by showing that there is a "reasonable probability" that, but for the deficiency, "the result of the proceeding would have been different." Id. at 694. When a defendant pleads guilty and then challenges his guilty plea under 28 U.S.C. § 2255, "to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985); see Lee v. United States, 137 S. Ct. 1958, 1967 (2017). "Surmounting Strickland's high bar is never an easy task, and the strong societal interest in finality has special force with respect to convictions based on guilty pleas." Lee, 137 S. Ct. at 1967 (quotations and citations omitted).

As for prejudice arising from alleged deficient performance at sentencing, a defendant must prove the existence of a reasonable probability that the defendant would have been sentenced

6

differently if the error had not occurred. See Sears v. Upton, 561 U.S. 945, 956 (2010); United States v. Carthorne, 878 F.3d 458, 469–70 (4th Cir. 2017). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694. Where counsel's error resulted in an improper guideline calculation, the error "can, and most often will be sufficient" to satisfy the defendant's burden as to prejudice. Molina-Martinez v. United States, 136 S. Ct. 1338, 1345 (2016); see United States v. Feldman, 793 F. App'x 170, 173–74 (4th Cir. 2019) (per curiam) (unpublished); Carthorne, 878 F.3d at 469–70. However, if the district court announces a substantively reasonable alternative, variant sentence independent of the advisory guideline calculation, there is no prejudice. See, e.g., Molina-Martinez, 136 S. Ct. at 1346–47; Feldman, 793 F. App'x at 173–74.

Elijah cannot pursue an ineffective assistance claim concerning his performance representing himself at sentencing. See Faretta v. California, 422 U.S. 806, 834 n.46 (1975). Likewise, Elijah cannot pursue such a claim against standby counsel. See United States v. Morrison, 153 F.3d 34, 55 (2d Cir. 1998); United States v. Cochrane, 985 F.2d 1027, 1029 n.1 (9th Cir. 1993) (per curiam); United States v. Windsor, 981 F.2d 943, 947 (7th Cir. 1992); Richardson v. United States, No. 4:16-CV-2981-RBH, 2017 WL 4776457, at *3 (D.S.C. Oct. 23, 2017) (unpublished). Thus, the court dismisses any such claim.

As for Elijah's attack on advice concerning his guilty plea, during Elijah's Rule 11 proceeding, Elijah swore that he understood the charge to which he was pleading guilty. See [D.E. 123] 15–16. Elijah also swore that he was fully satisfied with his lawyer's legal services, that he understood that by entering a guilty plea without a plea agreement he waived all non-jurisdictional defects in proceedings that occurred before he entered his guilty plea, and that he could not challenge the court's ruling on his motion to suppress on appeal. See id. at 13, 16–17. Elijah also swore that

7

he understood that the court could sentence him up to the statutory maximum on the count of conviction, and that if the court did so, Elijah could not withdraw his guilty plea. See id. at 19–20.

Elijah's sworn statements at his Rule 11 proceeding bind him. See, e.g., Blackledge, 431 U.S. at 74; United States v. Moussaoui, 591 F.3d 263, 299–300 (4th Cir. 2010); United States v. Lemaster, 403 F.3d 216, 221–23 (4th Cir. 2005). Those sworn statements show that Elijah admitted to the charged crime. Elijah's sworn statements also show that Elijah understood, even if he received a statutory-maximum sentence on the count of conviction, he could not withdraw his guilty plea and would not be able to go to trial. Accordingly, Elijah has not plausibly alleged "that, but for counsel's [alleged] unprofessional error[s], the result of the proceeding would have been different." Strickland, 466 U.S. at 694; see Lee, 137 S. Ct. at 1967–69; Hill, 474 U.S. at 59; Fields v. Attorney Gen. of Md., 956 F.2d 1290, 1297 (4th Cir. 1992). Elijah would not have "insisted on going to trial." Hill, 474 U.S. at 59; see Lee, 137 S. Ct. at 1967–69; Strickland, 466 U.S. at 694. Thus, Elijah cannot show prejudice from the alleged errors, and his claims challenging his guilty plea fail.

Alternatively, the claims fail concerning counsel's performance. Defense counsel's performance was adequate and falls within the wide range of professional performance. See, e.g., Strickland, 466 U.S. at 691 ("The reasonableness of counsel's action may be determined or substantially influenced by the defendant's own statements or action. Counsel's actions are usually based, quite properly, on informed strategic choices made by the defendant and on information supplied by the defendant."); cf. Florida v. Nixon, 543 U.S. 175, 187 (2004) (explaining that the defendant has the ultimate authority to decide whether to plead guilty). Elijah knowingly and voluntarily pleaded guilty. See Elijah, 723 F. App'x at 192–93. Thus, Elijah's challenge to his guilty plea fails.

As for Elijah's claim concerning his trial counsel's failure to develop a winning strategy, his

claim is conclusory and the record belies his assertion that counsel did not develop a strategy. See, e.g., Dyess, 730 F.3d at 359–60. That Elijah decided to plead guilty prevented counsel from seeking to "win" at trial. See Strickland, 466 U.S. at 691.

As for Elijah's claims concerning trial counsel's decisions seeking certain discovery and moving to suppress certain evidence and not making other motions, Elijah's counsel made a request for discovery and moved to suppress the damning evidence recovered from Elijah and his car. See [D.E. 15, 20, 57, 66]. This court properly denied the motion to suppress. See [D.E. 57, 66]. There was no deficient performance. See Premo v. Moore, 562 U.S. 115, 123–28 (2011); Strickland, 466 U.S. at 689–700. Likewise, to the extent Elijah vaguely complains about other motions that counsel failed to make, Elijah has not plausibly alleged that any such motion was meritorious or that there is a "reasonable probability" that such a motion would have affected the outcome of his case. Thus, the claims fail. See, e.g, Kimmelman v. Morrison, 477 U.S. 365, 375 (1986); Strickland, 466 U.S. at 689–700.

As for Elijah's claims concerning trial counsel's decisions at the suppression hearing, trial counsel's performance was comfortably within the wide range of professionally competent representation. See Mot. Suppress Hrg. Tr. [D.E. 66] 23–40, 65–79; Premo, 562 U.S. at 123–28; Van Hook, 558 U.S. at 11–12; Strickland, 466 U.S. at 690–700. Moreover, Elijah had the "ultimate authority to make" the decision to testify at the suppression hearing. See Jones v. Barnes, 463 U.S. 745, 751 (1983). Elijah choose to testify. Counsel did not perform deficiently, and Elijah's claims about the suppression hearing fail as to performance and prejudice. See, e.g, Premo, 562 U.S. at 123–28; Van Hook, 558 U.S. at 11–12; Strickland, 466 U.S. at 689–700.

As for Elijah's claim concerning trial counsel's failure to challenge his North Carolina convictions, trial counsel objected to the PSR's career offender-designation. See [D.E. 106] 17–18.

9

The court properly overruled the objections. See Elijah, 723 F. App'x at 193. Thus, Elijah's claim fails as to performance. See Premo, 562 U.S. at 123–28; Van Hook, 558 U.S. at 11–12; Strickland, 466 U.S. at 689–700. Alternatively, the court announced an alternative variant sentence. See Elijah, 723 F. App'x at 193. That alternative variant sentence defeats any prejudice claim. See Molina-Martinez, 136 S. Ct. at 1345–47; Feldman, 793 F. App'x at 173–74.

As for Elijah's arguments concerning the 2016 Guidelines manual, Elijah's assertions are conclusory. See, e.g., Dyess, 730 F.3d at 359–60. Alternatively, the 2016 Guidelines manual applies the same standards concerning career-offender status as the 2015 Guidelines manual. Thus, Elijah's claim fails as to performance and prejudice. See, e.g, Strickland, 466 U.S. at 689–700.

As for Elijah's claim concerning appellate counsel's performance, Elijah's counsel properly pressed arguments challenging the guilty plea, the motion to suppress, and Elijah's career-offender designation. See Elijah, 723 F. App'x at 192–93. Elijah's vague claim concerning appellate counsel fails as to performance and prejudice. See, e.g, Strickland, 466 U.S. at 689–700.

Elijah's motion for summary judgment is meritless. Accordingly, the court denies Elijah's motion for summary judgment.

After reviewing the claims presented in Elijah's motions, the court finds that reasonable jurists would not find the court's treatment of Elijah's claims debatable or wrong and that the claims do not deserve encouragement to proceed any further. Accordingly, the court denies a certificate of appealability. See 28 U.S.C. § 2253(c); Miller-El v. Cockrell, 537 U.S. 322, 336–38 (2003); Slack v. McDaniel, 529 U.S. 473, 484 (2000).

## B.

As for Elijah's motion for a reduction of sentence under the First Step Act, on August 3, 2010, Congress enacted the Fair Sentencing Act of 2010 ("Fair Sentencing Act"), Pub. L. No. 111-

10

220, 124 Stat. 2371, 2372 (codified as amended at 21 U.S.C. § 801, et seq.). Section 2 of the Fair Sentencing Act reduced statutory penalties by increasing the drug quantities necessary to trigger certain statutory minimums and maximums. For example, the amount of crack cocaine necessary to trigger a 5 to 40 year sentence increased from 5 to 28 grams. Likewise, the amount of crack cocaine necessary to trigger a 10 year to life sentence increased from 28 grams to 280 grams. See id., § 2, 124 Stat. at 2372.

The First Step Act makes the Fair Sentencing Act's reductions in mandatory minimum sentences apply retroactively to defendants who committed their "covered offense" of conviction before August 3, 2010. See First Step Act § 404(a), 132 Stat. at 5222. Section 404(a) defines "covered offense" as "a violation of a Federal criminal statute, the statutory penalties for which were modified by section 2 or 3 of the Fair Sentencing Act . . . that was committed before August 3, 2010." Id. Under the First Step Act, a "court that imposed a sentence for a covered offense may . . . impose a reduced sentence as if sections 2 and 3 of the Fair Sentencing Act of 2010 . . . were in effect at the time the covered offense was committed." First Step Act § 404(b), 132 Stat. at 5222. A court that modifies a sentence under the First Step Act does so under 18 U.S.C. § 3582(c)(1)(B), which allows a court to "modify an imposed term of imprisonment to the extent otherwise permitted by statute." 18 U.S.C. § 3582(c)(1)(B); see United States v. Woodson, 962 F.3d 812, 816–17 (4th Cir. 2020); United States v. Chambers, 956 F.3d 667, 671 (4th Cir. 2020); United States v. Wirsing, 943 F.3d 175, 183 (4th Cir. 2019); United States v. Alexander, 951 F.3d 706, 708 (6th Cir. 2019). If a defendant qualifies, courts may consider a motion for a reduced sentence only if the defendant did not previously receive a reduction pursuant to the Fair Sentencing Act and did not have a motion under the First Step Act denied "after a complete review of the motion on the merits." First Step Act § 404(c), 132 Stat. at 5222.

11

Under the First Step Act, the district court adjusts the sentencing guideline calculations "'as if' the current lower drug offense sentences were in effect at the time of the commission of the offense." United States v. Curry, 792 F. App'x 267, 268 (4th Cir. 2020) (per curiam) (unpublished); see Chambers, 956 F.3d at 671–72. "Nothing in . . . section [404(c) of the First Step Act]," however, "shall be construed to require a court to reduce any sentence pursuant to this section." First Step Act § 404(c), 132 Stat. at 5222; see, e.g., United States v. Gravatt, 953 F.3d 258, 260 (4th Cir. 2020); Wirsing, 943 F.3d at 184–86; United States v. Barnes, No. 3:94cr80 (DJN), 2020 WL 1281235, at *4 (E.D. Va. Mar. 17, 2020 ) (unpublished); United States v. Latten, No. 1:02CR00011-012, 2019 WL 2550327, at *1–4 (W.D. Va. June 20, 2019) (unpublished).

Elijah has finished serving his revocation sentence in case number 7:07-CR-10-D. Elijah's conviction in case number 4:15-CR-70-D is not a covered offense under section 404(a) the First Step Act. See United States v. Lassiter, 774 F. App'x 163, 163 (4th Cir. 2019) (per curiam) (unpublished). Thus, Elijah is not eligible for relief in either case under section 404(b) of the First Step Act.

Alternatively, even if the court has discretion to reduce Elijah's sentence in either case 7:07-CR-10-D or 4:15-CR-70-D, it would not reduce Elijah's sentence. The court has completely reviewed the entire record, Elijah's arguments, the advisory guideline range, and all relevant factors under 18 U.S.C. § 3553(a). See Chavez-Mesa v. United States, 138 S. Ct. 1959, 1966–68 (2018); Chambers, 956 F.3d at 671–75; United States v. May, 783 F. App'x 309, 310 (4th Cir. 2019) (per curiam) (unpublished). Elijah engaged in serious criminal conduct in case number 7:07-CR-10-D. See PSR ¶¶ 3–4. After serving a 108-month sentence in case number 7:070-CR-10-D, Elijah got out and again engaged in serious criminal conduct. Elijah's misconduct led to Elijah's 36-month revocation sentence on August 17, 2015. See [D.E. 81, 82]. Notably, while on federal supervision

from the 2007 case, law enforcement officers found Elijah asleep in the driver's seat of a vehicle parked partially on a roadway and partially on an individual's yard. Law enforcement officers observed multiple cellphones, razor blades, and rolling papers in the car. After Elijah consented to law enforcement's request to search the vehicle, officers recovered a digital scale, 39.128 grams of cocaine, 1.4537 grams of heroin, and 0.4141 grams of 3, 4 methlylenediocy-N-ethylcathinone. See PSR [D.E. 106] ¶¶ 4–5. That arrest led to Elijah's conviction in case number 4:15-CR-70-D.

Elijah is a violent recidivist. He has convictions for robbery aided by another, felony criminal sale of a controlled substance, misdemeanor criminal sale of a controlled substance, criminal possession of a loaded gun, criminal possession of a controlled substance, possession with intent to sell or deliver cocaine (three counts), possession of a firearm by a felon, resisting a public officer (two counts), possession with intent to sell or deliver heroin (two counts), possession with intent to sell or deliver marijuana, manufacturing a schedule I controlled substance, maintaining a vehicle, dwelling, or place for a controlled substance (two counts), possession of cocaine, assault on a government official or employee, possession with intent to manufacture, sell, or deliver heroin, possession with the intent to manufacture, sell, or deliver a schedule II controlled substance, and possession with the intent to distribute 5 grams or more of cocaine base (crack), a quantity of cocaine, a quantity of heroin, and a quantity of methylenedioxymethamphetamine (MDMA). See id. at ¶¶ 10–23. Elijah has performed terribly on supervision. See id. at ¶¶ 10–12, 14, 16, 18, 23. Indeed, as mentioned, the conduct underlying Elijah's conviction in case number 4:15-CR-70-D occurred while on federal supervision in case number 7:07-CR-10-D. See id. at ¶ 23.

The court also has considered Elijah's post-sentencing conduct. Cf. Pepper v. United States, 562 U.S. 476, 491 (2011); Chambers, 956 F.3d at 671–75. In light of Elijah's serious criminal conduct, serious criminal record, the need to promote respect for the law, the need to incapacitate

13

Elijah, and the need to protect the public from Elijah, the court declines to reduce Elijah's sentence in either case. See, e.g., Chavez-Mesa, 138 S. Ct. at 1966–68; Chambers, 956 F.3d at 671–75; Barnes, 2020 WL 1281235, at *4; Latten, 2019 WL 2550327, at *1–4; 18 U.S.C. § 3553(a).

In reaching this decision, the court has considered the entire record, Elijah's arguments, and the section 3553(a) factors. However, even if the court miscalculated the advisory guideline range in either case, it still would not reduce Elijah's sentence in light of the entire record and the section 3553(a) factors. See 18 U.S.C. § 3553(a); United States v. Gomez-Jimenez, 750 F.3d 370, 382–86 (4th Cir. 2014); United States v. Hernandez-Espinoza, 701 F.3d 156, 161–65 (4th Cir. 2012).

## C.

As for Elijah's motions for compassionate release, on December 21, 2018, the First Step Act went into effect. See First Step Act, Pub. L. No. 115-391, 132 Stat. 5194, 5249 (2018). Before the First Step Act, only the Director of the Bureau of Prisons ("BOP") could file a motion for compassionate release. Under the First Step Act, a sentencing court may modify a sentence of imprisonment either upon a motion of the Director of the BOP "or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A).

After a defendant meets the exhaustion requirement, a defendant must (1) demonstrate "extraordinary and compelling reasons" for a sentence reduction, or (2) be at least 70 years old, have served at least 30 years in prison, and have the Director of the BOP determine that the defendant is not a danger to the safety of another person or the community. Id. In deciding to reduce a sentence under section 3582(c)(1)(A), a court must consult the sentencing factors in 18 U.S.C. § 3553(a) and

14

must ensure that a sentence reduction is "consistent with applicable policy statements" of the United States Sentencing Commission ("Commission"). Id.

The Commission policy statements include U.S.S.G. § 1B1.13. Section 1B1.13 essentially parrots section 3582(c)(1)(A)'s requirements and adds that the defendant not be "a danger to the safety of any other person or to the community." U.S.S.G. § 1B1.13(2). Section 1B1.13's application notes provide examples of extraordinary and compelling reasons, including (A) serious medical conditions of the defendant, (B) advanced age of the defendant when coupled with a serious deterioration in physical and mental health due to aging and having served at least 10 years or 75% of his or her imprisonment term (whichever is less), (C) family circumstances, or (D) another extraordinary and compelling reason. See U.S.S.G. § 1B1.13 cmt. n.1.[3] Application note 2

---

[3] Application note 1 to U.S.S.G. § 1B1.13 states in full:

1. Extraordinary and Compelling Reasons.—Provided the defendant meets the requirements of subdivision (2), extraordinary and compelling reasons exist under any of the circumstances set forth below:

   (A) Medical Condition of the Defendant.—

      (i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

      (ii) The defendant is—

         (I) suffering from a serious physical or medical condition,

         (II) suffering from a serious functional or cognitive impairment, or

         (III) experiencing deteriorating physical or mental health because

15

states that "an extraordinary and compelling reason need not have been unforeseen at the time of sentencing to warrant a reduction in the term of imprisonment." U.S.S.G. § 1B1.13 cmt. n.2. Thus, the fact "that an extraordinary and compelling reason reasonably could have been known or anticipated by the sentencing court does not preclude consideration for a reduction under this policy statement." Id. Application note 3 states, "[p]ursuant to 28 U.S.C. § 994(t), rehabilitation of the defendant is not, by itself, an extraordinary and compelling reason for purposes of this policy statement." U.S.S.G. § 1B1.13 cmt. n.3.

The Commission has lacked a quorum since Congress enacted the First Step Act and has not updated U.S.S.G. § 1B1.13 to account for the First Step Act. Accordingly, section 1B1.13 does not

---

of the aging process,

that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

(B) Age of the Defendant.—The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.

(C) Family Circumstances.—

(i) The death or incapacitation of the caregiver of the defendant's minor child or minor children.

(ii) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.

(D) Other Reasons.—As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

U.S.S.G. § 1B1.13 cmt. n.1.

Case 4:15-cr-00070-D   Document 158   Filed 08/25/20   Page 16 of 21

provide a policy where an inmate files a motion for a sentence reduction under 18 U.S.C. § 3582(c)(1)(A). Nevertheless, section 1B1.13 provides applicable policy when assessing an inmate's motion, but a court independently determines whether "extraordinary and compelling reasons" warrant a sentence reduction under 18 U.S.C. § 3582(c)(1)(A)(i). See, e.g., United States v. Clark, No. 1:09cr336-1, 2020 WL 1874140, at *2 (M.D.N.C. Apr. 15, 2020) (unpublished). In doing so, the court consults not only U.S.S.G. § 1B1.13, but also the text of 18 U.S.C. § 3582(c)(1)(A) and the section 3553(a) factors. See, e.g., id.; Dinning v. United States, No. 2:12-cr-84, 2020 WL 1889361, at *2 (E.D. Va. Apr. 16, 2020) (unpublished).

Elijah seeks compassionate release pursuant to section 3582(c)(1)(A)(i). In support, Elijah relies on the "other reasons" policy statement in application note 1(D) to U.S.S.G. § 1B1.13. See [D.E. 132] 1–4. Specifically, Elijah cites the COVID-19 pandemic, his "prediabetic" status, and his body mass index of 30. See id.

The court assumes without deciding that Elijah has exhausted his administrative remedies under 18 U.S.C. § 3582(c)(1)(A). The government has not properly invoked section 3582's exhaustion requirements to challenge Elijah's exhaustion of administrative remedies. See United States v. Alam, 960 F.3d 831, 833–34 (6th Cir. 2020).[4] Accordingly, the court addresses Elijah's claim on the merits.

As for the "other reasons" policy statement, the court assumes without deciding that Elijah's "prediabetic" condition and body mass index coupled with the COVID-19 pandemic are extraordinary circumstances consistent with application note 1(D). Cf. United States v. Raia, 954

---

[4] The Fourth Circuit has not addressed whether section 3582's exhaustion requirement is a jurisdictional or claims-processing requirement. The court assumes without deciding that the requirement is a claims-processing rule, and that the government must "properly invoke" the rule for this court to enforce it. See Alam, 960 F.3d at 833–34.

17

F.3d 594, 597 (3d Cir. 2020) ("[T]he mere existence of COVID-19 in society and the possibility that it might spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread."). Even so, the section 3553(a) factors discussed above counsel against reducing Elijah's sentence in either case. See United States v. Chambliss, 948 F.3d 691, 693–94 (5th Cir. 2020); Clark, 2020 WL 1874140, at *3–8. Accordingly, having considered the entire record, the steps that the BOP has taken to address COVID-19, the section 3553(a) factors, Elijah's arguments, and the need to punish Elijah for his criminal behavior, to incapacitate Elijah, to promote respect for the law, to deter others, and to protect society from Elijah, the court declines to grant Elijah's motions for compassionate release in either case. See, e.g., Chambliss, 948 F.3d at 693–94; United States v. Hill, No. 4:13-CR-28-BR, 2020 WL 205515, at *2 (E.D.N.C. Jan. 13, 2020) (unpublished).

### D.

As for Elijah's motion to seal, Elijah seeks to seal his name in the following documents he submitted to the court: (1) Motion for Reduction of Sentence [D.E. 102]; and (2) Motion for Copy of Docket Sheet [D.E. 103]. See [D.E. 129] 1. Elijah argues that sealing his name serves the "compelling interest" of his safety and his family's safety. See id.

This court has considered the motions under the governing standard. See, e.g., United States v. Doe, 962 F.3d 139, 145–53 (4th Cir. 2020); Doe v. Pub. Citizen, 749 F.3d 246, 272–73 (4th Cir. 2014). The court makes the following findings of fact and conclusions of law after considering the common law and First Amendment right of access.

"The Fourth Circuit has directed that before sealing publicly filed documents the court must first determine if the source of the public's right to access the documents is derived from the common law or the First Amendment." Silicon Knights, Inc. v. Epic Games, Inc., No. 5:07-CV-

18

275-D, 2011 WL 901958, at *1 (E.D.N.C. Mar. 15, 2011) (unpublished). "The common law presumption in favor of access attaches to all judicial records and documents, whereas First Amendment protection is extended only to certain judicial records and documents." Id. The common law does not provide as much protection to the interests of the public as the First Amendment. Id. Although there is a presumption of access to judicial records, that presumption can be rebutted if there is a countervailing "significant interest." Id.

The First Amendment right of access applies to Elijah's motions to seal his name in docket entry 102 and 103. See Doe, 962 F.3d at 146–53; In re State-Record Co., 917 F.2d 124, 129 (4th Cir. 1990) (per curiam). The court may seal documents in Elijah's criminal cases "only if (1) closure serves a compelling interest; (2) there is a 'substantial probability' that, in the absence of closure, that compelling interest would be harmed; and (3) there are no alternatives to closure that would adequately protect that compelling interest." Doe, 962 F.3d at 146; Public Citizen, 749 F.3d at 272–73; In re Washington Post Co., 807 F.2d 383, 392 (4th Cir. 1986).

First, the court assumes without deciding that Elijah's stated interest concerning his safety is compelling. See Doe, 962 F.3d at 147–48. As for whether there is a substantial probability that, absent sealing docket entry 102 or docket entry 103, Elijah's compelling interest would be harmed, Elijah fails to make the requisite showing. Elijah's motion at docket entry 102 discusses: (1) reductions in mandatory minimum penalties under the First Step Act and arguments concerning a reduction of his sentence; (2) sealing all information on the docket covered under the judicial conference privacy policy; (3) the effect of Haymond and its progeny; and (4) a constitutional challenge to the crack-cocaine disparity. See [D.E. 102] 1–5. Elijah's motion at docket entry 103 discusses sealing all information covered under the judicial conference privacy policy. See [D.E. 103] 1. Elijah's motion to seal offers no explanation why the information in the documents at docket

entry 102 or 103 put him or his family in danger. Cf. [D.E. 129] 1–2. As such, Elijah has not shown that sealing docket entry 102 or 103 serves the alleged compelling interest. Nonetheless, the motion at docket entry 129 shall remain under seal.

As for whether sealing the dockets in case number 7:07-CR-10-D or 4:15-CR-70-D would serve a compelling interest, those dockets comport with this court's Standing Order 09-SO-02 (E.D.N.C. Feb. 12, 2010). Cf. Doe, 962 F.3d at 147. That standing order provides an alternative less severe under the First Amendment than sealing docket entry 102 or 103 or sealing the entire criminal docket in each case. Moreover, nothing in this order implicates Elijah's safety. Likewise, Elijah has not identified specific documents on the public portion of either criminal docket that threaten his safety or identified specific threats arising from specific documents on the public portion of either criminal docket. Furthermore, the public and press have a qualified right of access to Elijah's name, docket entry 102 and 103, and the public portion of the criminal docket in each case. See Doe, 962 F.3d at 143–53; Public Citizen, 749 F.3d at 265–75 (holding that the public and press have a presumptive right to inspect civil docket); In re State-Records Co., 917 F.2d at 127–29 (holding that the district court erred in wholesale sealing criminal docket). The public portions of those dockets have been available since 2007 and 2015, respectively, without incident. Finally, there are alternatives to closure that would adequately protect Elijah's compelling interest. Specifically, this court's continued adherence to Standing Order 09-SO-02 (E.D.N.C. Feb. 12, 2010). Accordingly, Elijah has failed to meet his burden, and the court denies Elijah's motion to seal docket entries 102 and 103.

## II.

In sum, the court GRANTS the government's motion dismiss [D.E. 145], DISMISSES Elijah's section 2255 motion [D.E. 132], GRANTS Elijah's motions for an extension of time to file

[D.E. 135, 137], DENIES as meritless Elijah's motions [D.E. 139, 141], DENIES Elijah's summary

judgment motion [D.E. 150], DENIES a certificate of appealability concerning his section 2255

petition, DENIES Elijah's motion for a sentence reduction [D.E. 102], DENIES Elijah's motions for

compassionate release [D.E. 115, 132], [D.E. 153], and GRANTS Elijah's motion to seal docket

entry 129 in case number 7:07-CR-10-D, but DENIES Elijah's motion to seal docket entries 102 and

103 [D.E. 129]. The clerk shall close the case.

SO ORDERED. This 24 day of August 2020.

JAMES C. DEVER III
United States District Judge